Good afternoon, Your Honor. I would like to reserve four minutes for rebuttal, please. That's fine. I'm Brenda Popowell, and I represent the appellant in this case, Mr. Freddie Gregory. May it please the Court, Your Honors, the facts in this case could lead a reasonable jury to conclude that Officer Burnett did not have probable cause to stop, arrest, and prosecute Mr. Gregory, that he did so in violation of the Fourth Amendment, and that he did so in retaliation of Mr. Gregory's expression of criticism of Officer Burnett for harassing him previously. That's why he had a video camera installed in his truck, because Officer Burnett had previously stopped him and harassed him with no legal reason. That video is a recorded screen shot in my brief, but I would encourage the Court to review that video, and I actually have it queued up at one point. With Your Honor's permission, one of the issues that this turns on is whether or not Mr. Gregory was operating his vehicle at the time that Officer Burnett actually approached the car where he could actually see whether or not Mr. Gregory was wearing a seat belt. At that point in time, shortly after that, a few seconds after he approached, he sees Mr. Gregory when he ordered him out of his truck, opened the door, ordered him out of his truck, and said, if you're going to point your finger at me, I'm going to take you to jail. The reminder bell for the keys and the ignition begins to ding, and I actually have that queued up, if I may play that for Your Honors. Well, we've seen the video. Wonderful. Do you really need to use your time now? No, Your Honor. If you've seen the video, you hear the bell. And the reason that's so important is that I'm not sure that it was Officer Burnett. Under questioning by Officer Burnett's attorney, he was asked, did you know it was Officer Burnett? He replied, I thought so because of the car. That's the same car that Officer Burnett used when he had illegally stopped him previously. So Mr. Gregory on Fred Gregory Lane, which is a public road, there was much made of that. It really has no bearing on this case because Officer Burnett did not have probable cause to stop Mr. Gregory for a traffic citation, whether it's public or private. He lacked that probable cause. When did he stop him? He stopped him after Mr. Gregory had, as soon as Mr. Gregory saw the car, he stopped his car before he got on the main highway, which was Levi Branch Road. So he was still on Fred Gregory Lane. And the pictures I placed in the brief that are part of the record before the district court as well, the reason that's important, if you look at those photos, Your Mr. Gregory, he could not see as Mr. Gregory testified, whether he was wearing a seatbelt or even had a shirt on. I'm still trying to figure out, what was the stop? Was there a stop? Yes, there was. Okay. The court said it was. When did it happen? It happened after Mr. Gregory saw Mr. Burnett, turned off the engine of his truck, took off his seatbelt, turned on the video in his truck. And Officer Burnett put his hand in the windshield of his car to wave Mr. Gregory onto Levi Branch Road from Gregory, Fred Gregory Road. The reason that's important, there are two homes on Fred Gregory Road, Mr. Gregory's home and the home of his father. Officer Burnett gave lots of reasons for stopping himself in the middle of a public road. And one of those reasons he gave was not that he saw Mr. Gregory not wearing a seatbelt because it was impossible, but he said he stopped because Mr. Gregory was blocking a public road. Okay, counsel, I'm going to interrupt you for a second. Yes, Your Honor. I will tell you, I saw that and I think it was offensive. And I think that the police officer was totally out of line. Now, we have to analyze this from a legal standpoint. I do not understand why you say there was a stop. Mr. Gregory was stopped. He chose to walk over to where he was. I don't think there was anything unconstitutional about that. You can walk over to a stopped vehicle. At that point, he sees he's not wearing a seatbelt. And to me, that is a problem that you have. What he needs is probable cause to believe that he wasn't wearing his seatbelt. And if somebody's not wearing a seatbelt, they can come up with all sorts of explanations, but the officer's allowed to rely on what he sees. So I would like you to explain why it was a stop, why walking over to him was a stop, and why at that point he's not entitled to look and see whether he has a seatbelt on or not. Okay. The reason that it's a stop is because he pulled his car. This is the second encounter. The first encounter, the police officer stopped in the middle of Levi Branch Road. The second stop, he pulled about 10 feet away. And pulling up next to Mr. Gregory is a stop. Mr. Gregory submitted, when he saw him on Levi Branch Road, he submitted. He turned the engine of his truck off. He had no reason to pull into the position 10 feet away. When he walked up, the reason that there's no violation there, Mr. Gregory was not operating his vehicle. His vehicle had long been stopped. He was not operating it. Mr. Gregory testified he had no intent to operate it because he felt like that he was afraid to move. He felt like anything he did, Officer Burnett was going to arrest him or stop him impermissibly or harass him as he had previously. Let me ask you this. So the officer pulls up next to him. Was there anything at that point from preventing Mr. Gregory from putting his seatbelt on, turning the engine on, and driving off? Yes. He was afraid that if he did anything, anything at all, that the officer would find some sort of infraction. And indeed, that's what happened. Well, but, so your submission is that he felt like he couldn't leave. But there wasn't anything keeping him from leaving. Yes, the officer might have followed him down the road and turned on his blue light and stopped him. The question is, for Fourth Amendment purposes, is that a stop? Yes, Your Honor, it is. And in fact, in the Sixth Circuit, we require probable cause for some sort of traffic violation to pull someone over. You can't just pull someone over because you want to. He didn't pull them over. Do you have any cases that say that if you walk up to a stopped car, it's a stop? He didn't put his lights on. He didn't exercise anything. He never told him to stop. In fact, he told him to proceed. So where is the stop? The stop would be when he pulled along, when he was 10 feet away. Because he was in the police car, because he was a police officer, he'd previously harassed Mr. Gregory before and pulled him over. When a police officer pulls off the road 10 feet away from you and walks up to your car, I would say a reasonable jury would conclude with the facts drawn most favorably to Mr. Gregory that no one would feel free to leave. And Mr. Gregory testified he did not feel free to leave. He didn't feel free to back up, go forward. He sat there afraid to move. So he didn't have the intent to operate his vehicle. Once a police officer, a car pulls next to him and the police officer gets out and walks up. And you know, if it were a traffic stop, if it were about a seat belt violation, well it certainly exceeded the scope because he could have given him a citation and gone on his own way. But that's not what happened. Mr. Gregory said you're going to stop harassing me. It is Officer Burnett that pulls open the door and says jump on out of here. If you're going to point your finger at me, I'm going to take you to jail. It wasn't Mr. Gregory. Mr. Gregory didn't threaten. He wasn't disorderly. He was saying you're going to stop harassing me. And again, going back to Officer Burnett's conduct and what he could see about the seat belt, you understand it wasn't until he was right next to Mr. Gregory when the vehicle had long been off. The reason that's so important, he takes the license and actually puts it behind the tinted window and says on the video, look, this is so dark I can't see it. So all of that testimony about I saw him without the seat belt at 65 feet at 10 feet is completely lacking in credibility. But we know constitutionally that it doesn't matter, right? We know that the cases say it doesn't matter. The reason that that's in the brief and the reason I'm discussing it is the district court talked a lot about that. The district court turned this whole case on the seat belt. It didn't address disorderly. It didn't address menacing. Now the county prosecutor looked at the video and said that there was no crime committed. And one of the things I think is really important, I believe that Officer Burnett's attorney put in his brief that perhaps there was some sort of concession when the county attorney dismissed the case. And the county attorney, I asked him, please show me a document in this file. Show me anything that Mr. Gregory made any concession at all to get this agreement. And he says there is none. Also which I think is really important, I asked him was this about getting a conviction or whether he saw a crime. He even testified. He said, if the video had incriminated Mr. Gregory, I could have used that to prosecute him. And the question was, I'm not asking you whether you have enough evidence to get a conviction. I'm asking you, did you see Mr. Gregory commit a crime of disorderly conduct on that videotape? Answer, no. There was no crime committed, your honors. Mr. Gregory was arrested because Officer Burnett did not like that Mr. Gregory was expressing his First Amendment right to criticize him, to point his finger at him, and to express his dismay that he had been pulled over previous times. There are not many citizens who have video cameras in their vehicle. What do you do about the Supreme Court qualified immunity case? I mean, the judge dismissed the First Amendment retaliation on the basis of Reichel versus Howard. What do you say about that? Reichel does not apply, your honor. Reichel does not affect this Court's analysis because in Reichel, the U.S. Supreme Court held that it was not clearly established law that an individual has a First Amendment right separate from the retaliatory arrest when there is supported probable cause. In Reichel, there was supported probable cause. In Mr. Gregory's case, there is not. So the case considered not the criminalization of otherwise protected speech. Rather, it looked at the scope of the First Amendment right when the retaliatory motives lead to an arrest that is independently justified by probable cause. And your honors, we do not have that in this case. Okay, and the reason there wasn't probable cause to believe that he committed the seat belt infraction was why? Well, because he was not operating the vehicle. It's not that he didn't have the seat belt on. The vehicle must be in operation. And if you look at the cases, it's the totality of the circumstances. And the courts looked directly at what is the intent. For example, Officer Burnett argued in his brief that he intended to take his granddaughter to town. Well, that was what he initially intended until he saw the police car. That's why he had the video in his truck. He didn't intend that anymore. He stopped. He knew if that was Officer Burnett, if it was, because all he saw was the hand initially in the windshield, he knew that he was going to be stopped and his Fourth Amendment rights were going to be violated. So he had no intent to move at all. He even testifies in the depositions, he didn't want to. I ask him, why didn't you back up? Why didn't you do this? Why didn't you do that? His answer is, I was afraid to move. What difference does it make in this case that this little road is actually a public road? It's probably stopped in a public roadway. And that would give yet more reason, whether we want to call it reasonable suspicion or probable cause, for Officer Burnett to stop it. Yes, Your Honor. It actually cuts the other way. And the reason it does, if you look at the photographs, there are two homes on Fred Gregory Road. No one is coming to Fred Gregory or his father. That's it. I even had Mrs. Gregory, who was there at the scene, we took her deposition. Was he blocking anyone in that road? Were you trying to get out? Was anyone else trying to get out? And of course, the answer is no. No one is going to be on Fred Gregory Road unless they're coming to see Mr. Gregory or Mr. Gregory's father. The public road is Levi Branch Road. That's the road where Officer Burnett, and he testified to this in his deposition, no four-way stop, no stop sign. A police officer stopped dead in the middle of Levi Branch Road. You understand, a motorist could have come up behind him. He didn't have his lights on when he was in Levi Branch Road. There could have been an accident. There could have been anything. He created a public safety issue because he was going to harass Mr. Burnett, Mr. Gregory. But technically, isn't Fred Gregory Road Drive a public road as well? Yes, Your Honor. It was grandfathered in. And Mr. Gregory did not know that at the time when he had the interaction. But it makes no difference. It could have happened on Levi Branch Road. There was no probable cause for the stop, arrest, or prosecution. It didn't matter. But it cuts against Officer Burnett's credibility when he makes such a huge effort to say that Mr. Gregory was blocking a road and that aroused his suspicions because there's two homes on this road. You understand, it's a rural area in the country. I'd like to ask you another question. Yes, Your Honor. Let's say we believe that there was probable cause on the seatbelt and not probable cause on anything else, which leaves the malicious prosecution. The elements for malicious prosecution are different in a 1983 case and a state case. You need to have an impairment of your liberty. So what did he experience based upon the disorderly charge that he didn't experience solely on the seatbelt charge? The seatbelt could be handled with a citation. You understand, Your Honors. And he had a restriction on when you have to come to court on any type of legal matter, it's considered to be a restriction on your liberty. For example, Justice Ginsburg explicitly recognized in Albright that officers may violate the Fourth Amendment by perpetuating an unlawful seizure when it's in their power to dissolve probable cause. I asked the county attorney, did Officer Burnett come and say, you know, I was really mad at this guy. I've been harassing him. I didn't have probable cause. I'd like to dissolve this case. I asked the prosecutor, what would you have done? He said, I would have probably dismissed. But that didn't happen. Any time he was held in jail for like four hours and 41 minutes and went to court approximately two or three times, any restriction on liberty, court, even a short time in jail, is still a violation of the Fourth Amendment without probable cause. Okay, Ms. Popow, your initial time has expired, but you will have your rebuttal. Thank you, Your Honors. May it please the court, Ms. Popowell, my name is Roger Wright on behalf of now Captain Burnett. I know, and it's a privilege to have oral argument, I know the court doesn't grant it in every case. Speak louder, please. Yes, ma'am. I've tried to address in our brief every issue that was raised today by Ms. Popowell, came close to the page and the word limit. So I don't want to just rehash the brief. So we believe the district court ruled correctly. However, we believe that we've raised other issues for alternative grounds to support the award of qualified immunity and dismissal of state law claims. And I would first like to just ask the court if it has any questions about our position. Well, I've got a question. Yes, ma'am. So it looks like this guy behaves as he behaves in this tape that we have, and he's rewarded by being promoted to captain. Is that what I gather from your opening argument? He's a long-tenured, well-respected officer with the state police. He has no disciplinary history. I'll tell you, it doesn't say much for, have you seen it? Yes, ma'am. It doesn't say much for the town that he was promoted in, I must say. Why should the state malicious prosecution claim be dismissed? The state law malicious prosecution claim be dismissed? Judge, it's a little unusual in this case because they took the county attorney's deposition, but the court record from the Bell District Court, we put in the record, there's clearly an agreed order of dismissal that was testified to that Mr. Gregory's counsel signed, he prepared, submitted to the prosecutor, and they signed. Our position is both under federal and state law, it has the same element of malicious prosecution. You have to have a favorable termination. And the law is clear in Kentucky, and there's Sixth Circuit cases that echo that from out of Kentucky, that an agreed compromise cannot support a We don't know what's behind that. We have an order, that's all. We don't know whether there was a compromise behind that. The order itself is a compromise, Your Honor. People do that all the time. Plea agreement stipulations of probable cause. I mean, for instance, if you take the position with that, then any court order could be questioned or set aside. There was no, there's no issue in the record from the county attorney. This attorney was not questioned, his defense attorney. I know, but you haven't established as a matter of law that there's no genuine issue with regard to whether that was the result of a compromise. An agreed order in and of itself is a compromise. I disagree. I think there's a case that discusses that, that remanded to find out if something really was a matter of compromise. The prosecutor could have called him and said, look, I looked at this, this is a big mistake. I want to dismiss the case. Will you sign an order? And he says, sure. We don't, we don't know. I'm not familiar with what case you're on or citing out of Kentucky, but I believe in this case, uh, I'm not familiar with the one that you're deciding to, but as far as I'm, as far as I'm aware of the case that cast or not case, which discusses the issue most at length, most recently, uh, states in that case, that case was dismissed by unilateral motion of the prosecutor. It states in there, the defendant didn't have to agree in Ting and in fact did not. In this particular case, there was a signed order and there was consideration for the order because the seatbelt offense was dismissed in Kentucky. A person has a right to a jury trial for even a violation. So Mr. Gregory did get a benefit of the bargain in the sense that the seatbelt charge went away along with the disorderly conduct charge and he didn't have to stand trial on that and face a potential conviction for that and have that onto his on his record. So there clearly is consideration and that's discussed in Mr. Nunn's deposition. And what, what is your position that, is it your position that there was probable cause or for the arrest based upon the seatbelt violation? Our position on that is again, Officer Burnett did not arrest Mr. Gregory obviously just for the seatbelt violation. We could see that that's a violation under Kentucky law, which is normally it can be an arrestable offense under Chapter 4, 31015 if you have additional reasonable grounds to believe a person wouldn't appear or answer to the citation. However, the arrestable offense that was charged was a disorderly conduct in the second degree. However, as the district court noted and we argued the district court for federal constitutional purposes after city versus Atwater versus City of Lago Vista, which was a seatbelt case, which had followed the U.S. Supreme Court, which was an arrestable offense in Texas, they said for the Fourth Amendment, there was probable cause for any offense being committed regardless of what the potential penalty is under state law. So what, what's your, what's your answer to? Our position is that there is no Fourth Amendment false arrest claim in this case because there was probable cause for the seatbelt violation regardless of how the court comes down on our qualified immunity arguments on disorderly conduct and menacing. And the plaintiff did not plead a state law claim related to false arrest. So any argument on that's been waived. So what, what was the probable cause? The probable cause for the seatbelt violation? The testimony is pretty clear in the record. Mr. Gregory admits he drove up to the point where he first saw Lieutenant Burnett. He was operating the vehicle. Lieutenant Burnett saw him drive up to that point. He drives up, pulls off to the side, gets out and it's clear from the video. And when he walks up that he does not have the seatbelt on, he's sitting in the middle of a public art marked roadway has been seen driving up to the point. The officer approaches. It's clear he doesn't have a seatbelt on. The officer asked him about it. He doesn't say, I just took my seatbelt off. He says, I'm on private property. So all that together, a totality of the circumstances is, is what the officer was faced with. And it's further backed up by the video is there was probable cause. I thought it was Mr. Gregory's position, maybe in deposition testimony, that once he saw Officer Burnett driving in his direction, he turned the car off, took off his seatbelt and adjusted the camera in the car so that it would better capture, uh, in his view, the events right around, uh, where he was sitting so that he didn't take the seatbelt off, but it had it on initially. That's his testimony. So I guess my point is this, you have to take all, you know, uh, facts and reasonable inferences in favor of, of the non-moving party, who would be Mr. Gregory. And if there seems to be a dispute in terms of what happened in that two, three, four minutes span of time, our position is from a qualified immunity standpoint, there's no dispute that he drove up to the point where he first, at the end of Freddie Gregory Lane, where he first saw Lieutenant Burnett out on the highway. There's no dispute that when Lieutenant Burnett approaches him, he doesn't have a seatbelt on. He's still sitting in the middle of a marked roadway, does not tell Lieutenant Burnett when he asked him about the seatbelt that he had just taken it off. There's no dispute that your, so your position is when Officer Burnett is out in Levi Branch Road, he can see that at that point, Mr. Gregory does not have a seatbelt on? That was Lieutenant Burnett's testimony, and he also testified he saw him drive up to that point, and then when he pulls up beside him and gets out, before there's anything that would even implicate the Fourth Amendment, he walks up to the car and it's clear at that point, he doesn't see that he has a seatbelt on. Yeah, but you see Mr. Gregory's version is that he had it on, and he came to a complete stop before he unhitched it. Now who's, either, either we have to accept that for purposes of summary judgment, or we have to send it back because there's a dispute of fact as to what happened in this case. Our position is, is even if you take the facts in light, most favorable to Mr. Gregory, a reasonable officer under those circumstances still could believe there was probable cause because he saw him drive up to the point, he comes up to him, he's still in physical control of a motor vehicle in the middle of a marked roadway, and it's clear at that point he's not wearing a seatbelt, he questions him about it, he offers him no exculpatory account for the officer to consider, in fact he says to him twice, you're sitting here not wearing a seatbelt, Mr. Gregory never denies it. So the undisputed facts of record for qualified immunity is not whether or not you all may at the end of the day agree when you've seen everything that he had probable cause under the standpoint, but whether or not a reasonable officer would believe under 189.125 with what the officers observed and where the car is located when he approaches and it's clear he doesn't have a seatbelt on, there's nothing under Kentucky law that would say under those circumstances even if you take everything Mr. Gregory says is the gospel truth that he still couldn't be cited for that. So it sounds like a major key to your, that argument is that the car is sitting in a public roadway, because I'm not sure, would you have to make the same argument if the car were, if that, if Frederick, Fred Gregory driveway was a private drive? No, we would not cite somebody for a seatbelt violation on private property. So the real linchpin here in your view is that this is a public thoroughfare. Yes, and the officer states on the tape when Mr. Gregory says I haven't got on the public road, I'm sitting on my own property, he says well no you're not, this is marked roadway and you're not wearing a seatbelt. And Mr. Gregory doesn't dispute that, he just wants to argue that he's on private property. Well if it is, let me just say this, if it is public property, it's pretty obvious that the reason it is is because somebody had to pay for that bridge on which he was sitting, number one. And number two, a marked road means nothing anymore. They're marking dirt roads for the emergency, the 911E people, and so everything's marked roads now. I don't know if I buy that. Well, Your Honor, if I get a federal FFL, the ATF can come and look at my house any time they want because I'm a regulated business. When the county taxpayers pay for a roadway and there's a green sign put up, the officer, we've put undisputed testimony in the record that this is in fact a county maintained and a publicly owned roadway. But even beyond that, for qualified immunity purposes, an officer. You have seen the road though. I have seen the road. Okay. The road leads to just two houses, his house and his father's house. And how long is that road? Maybe not even a hundred yards. Yes, Your Honor, but for purposes of what we're dealing with, it's clear that Officer Burnett did not enter private property. And even if he did, even if he just wanted to pull up and talk to somebody, consensual encounters, the Commonwealth versus King, Florida versus Jardines, you can approach someone and go up there. But the key here is the seatbelt. Correct. Right. So you still have to deal with that. Yes. And our position is, is all the facts of record that are undisputed that he drove to the point where he was first observed by Lieutenant Burnett. Lieutenant Burnett testified he did not believe he was wearing a seatbelt. He didn't affect the traffic stop at that point. He pulls up beside of him, gets out and walks over and clearly observes at that time he's not wearing a seatbelt. Says as much to Mr. Gregory on the tape. That's not disputed. No exculpatory explanation was offered. Mr. Gregory offered testimony that he was continuing, going, intending to continue to operate the vehicle and go to town. And he was still sitting in the middle of a marked roadway. Your opposing counsel says that he could have just cited him for not wearing a seatbelt at that point. Why wouldn't he have done that? Well, because he elected to arrest him for the offense as he stated on the tape. But again, for purposes of the Fourth Amendment. And those are like disorderly conduct? Yes, ma'am. Okay. But again, for purposes of the Fourth Amendment, as long as there's probable cause or a reason why you believe there's probable cause for any of those offenses, it doesn't matter. I could get on Westlaw, but could you define disorderly conduct for me under Kentucky law? I cited under 525.060, there's several different subsections. But essentially, it's a person has to be in a public place and intentionally or want to create a risk of public annoyance or alarm by making unreasonable noise, by engaging and fighting violent or tumultuous or threatening conduct. And there's another engaging in a course of conduct that's hazardously or physically offensive and serves no legitimate purpose. It's a class B misdemeanor. And does that include the charge of menacing? Because that's actually the word that was used by- Menacing is a separate charge under chapter 508.060. That is a person intentionally puts a person in imminent fear of physical injury. Because isn't that what Officer Burnett said at that moment in time? He was arresting him for? Yes, and we relayed that in our facts and also from his deposition as to why he elected when he got to the jail to change it to disorderly conduct in the second degree. Our position is though, factually, is he would be entitled to qualified immunity because the facts that he was presented with that aren't in dispute would give a reasonable officer to believe that either one of those charges can be dropped. Does that include that no reasonable officer could have thought that they had probable cause to arrest or charge him with disorderly menacing or anything other than a seat belt violation? Where does that take us on the malicious prosecution claim? Our position is that because there was probable cause as the district court found for the seat belt violation and that both of those were district court offenses, it didn't change the court, it didn't take it to a felony level or send him to circuit court. He would have been entitled to a jury trial on either one of them that the malicious prosecution fails for the reason that there was probable cause for the seat belt offense. However, our separate argument, as the court's indicated as an issue with, is that because the case was resolved by a weight of greed compromise that did away with the seat belt offense, he can't satisfy the favorable termination element. Let me just ask you this. He had to give a bond? I think he said it was an OR bond. I'm not sure if he had to post money or was just released on own recognizance. I don't want to state one way or another to the court on that. He would not have had to do that for a civil infraction, right, for the seat belt? Judge, we concede Lieutenant Burnett would not have arrested him just for the seat belt offense. Does that have, you keep saying that, does that have significance? It has significance that there's not a state law claim relating to the arrest under the Fourth Amendment as long as there's probable cause for any offense, even if it's a non-arrestable offense. I don't see the significance of that concession. You keep saying it, but I don't know. If there's probable cause for the seat belt offense, he can't win on a Fourth Amendment claim for false arrest. That's right, so I don't know why you, but he can't win on it for false arrest. But there was a separate prosecution for disorderly conduct for which it's at least a question of fact whether any reasonable officer could think that there was probable cause. And so your response to that, you have two. One, it wasn't dismissed, and the other was- It wasn't, I'm sorry, I didn't understand. It wasn't terminated in his favor. Yes, under the restatement of torts for malicious prosecution, which the federal courts look to as well, it is clear that you have to have a termination on the merits in your favor to proceed with a malicious prosecution case. And anything on a technical or an agreed compromise termination cannot support the elements of malicious prosecution. Did he have any restraints on his liberty that were different under the disorderly, that were different from the seat belt? I don't know how many times he would have had to go to court to set up a trial. If you, again, under Kentucky law, even for violations, you're entitled to a jury trial. So he could have gone and had a pre-trial, then had a trial date set, even if he was only facing the seat belt offense. Now that's something that can be resolved in traffic court in front of a judge if you elect to. But if you want a jury trial, you're entitled to it, just like you would be for the disorderly conduct. So I can't say for sure how it might have proceeded different in Bell District if that was the only charge. But it's clear that both of the charges would have both been resolved in district court, and then he would have had a jury trial right on both of them. I'm out of time, Your Honor. Okay. Thank you, Mr. Ray. Your Honor, regarding Officer Burnett, he did testify that he saw Mr. Gregory without a seat belt on when Officer Burnett was on Levi Branch Road, which according to Mr. Gregory's measurements, which are not refuted by Officer Burnett. Well, he says they're wrong, but he has no measurements of his own, that he was 65 feet away. I ask Officer Burnett, why would you wave a citizen onto the road that's not wearing a seat belt? Why would you wave them onto the road? Well, at that time he comes up and he stopped. I motioned for him to come out, and I actually see about the seat belt. He's up there right at the intersection before he could turn onto Levi Branch Road. And I keep asking, does someone have to stop at an intersection? Can you just pull out into traffic? Would you expect someone to stop and look both ways? And his response was, yes, I would. And that goes against the whole argument that he's blocking the road and somehow that gives him probable cause to go over there. He says, I motioned for him to come out. He doesn't. Then I go over to see if he has a seat belt on. He goes over. That's when he can see he doesn't have a seat belt on, not at Levi Branch Road. But when you testify both ways, obviously that cuts in Mr. Gregory's favor, and that should be viewed in the light most favorable to Mr.  In closing, Your Honor, Fourth Amendment rights are not second-class rights. Former Justice Robert Jackson recognized in his famous dissent in Brinegar, which we've looked at Fourth Amendment law, that much of that has been adopted now. And one of the things that Justice Jackson talked about is we must remember that an illegal seizure is usually committed beyond the court's supervision, and it's limited only by the judgment and by the moderation of the officer. We must also remember that the authority to conduct a stop, arrest, and prosecution may be exercised by the most unfit and ruthless officers abusing their authority, as well as by the fit and responsible. So the fact that he's going on about his own business, he's every man, he's every woman, he is all of us. He stopped at the end of that road. He should have been able to go on about his business without fear of being stopped illegally again, and the district court should be reversed. Thank you, Your Honors. Okay, thank you, counsel, both of you for your arguments today. We certainly appreciate them. The case will be submitted.